**BENJAMIN ROSENTHAL, OSB NO. 830828**
Attorney at Law
1023 SW Yamhill St Ste 200
Portland, Oregon 97205
Telephone: (503) 226-6409
Facsimile: (503) 226-0903
Email: benrose@europa.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DANIEL ORME, | ) | CASE NO. CV 07-859-MO |
| Plaintiff, | ) | |
| vs. | ) | DECLARATION OF PHIL GOLDSMITH |
| | ) | |
| BURLINGTON COAT FACTORY OF OREGON, LLC et al., | ) | |
| Defendant. | ) | |

I, Phil Goldsmith, under penalty of perjury under the laws of the United States,

declare as follows:

### I.

### INTRODUCTION

I make this declaration to explain my opinion that the hourly rates requested by

Page - 1  DECLARATION OF PHIL GOLDSMITH

plaintiff's counsel are in line with relevant market rates prevailing in the community. I will first summarize my credentials to give this opinion. I have not been asked by plaintiff's counsel to review, and therefore express no opinion on, the specific billing entries which are challenged by the defendant as being inadequately documented or inappropriately charged.

## II.

## THE BASIS FOR MY EXPERTISE

I am a 1978 admittee to the Oregon State Bar and have specialized since 1980 in class action and financial institution litigation. A copy of my cv is attached as Exhibit A.

Because most of my compensation comes from court-awarded attorney fees, I carefully follow developments in the attorney fee case law and monitor evidence of local market rates. I have spoken on attorney fees in class actions at two national conferences, the 1994 National Consumer Law Center's annual consumer law conference (held in Boston) and the 2000 National Association of Consumer Advocates class action conference (held in Chicago). The latter national presentation was subsequently published as Goldsmith, "Attorney Fee Awards in Class Actions," 6 Consumer Advocate 22 (May/June 2000). I have also spoken locally on a variety of attorney fee issues.

I periodically testify as an expert witness on attorney fees, particularly on hourly rates. E.g. Valentine v. Equifax Information Services LLC, 543 F. Supp. 2d 1232, 1235 (D. Or. 2008); Miranda v. City of Cornelius, Civ. No. 04-CV-241 AA, Opinion and Order (March 8, 2006), 5, a copy of which is attached as Exhibit B.

Prior to being retained as an expert in this case, I did not know Ben Rosenthal except by reputation and by his occasional posts to a legal email list that we both participate in.

Page - 2  DECLARATION OF PHIL GOLDSMITH

Meagan Flynn and I have served for more than a decade on the Oregon Trial Lawyers

Association ("OTLA") amicus committee. I have on occasion served as a reviewer of briefs she

has written on OTLA's behalf to the Oregon appellate courts.

III.

## REASONABLENESS OF THE REQUESTED HOURLY RATE

For the following reasons, I believe that the applicable market from which to

judge the reasonableness of the rates requested here is Portland-area lawyers who handle

commercial (business) litigation. Congress directed that civil rights attorney fees awarded

pursuant to 42 U.S.C. §1988 "be governed by the same standards which prevail in other types of

equally complex Federal litigation, such as antitrust cases." S. Rep. No. 94-1011, 6 (1976),

quoted in Blum v. Stenson, 465 U.S. 886, 893 (1984). The United States Supreme Court has

since held that the principles governing "what is a 'reasonable' fee applies uniformly to all"

federal fee shifting statutes. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). See Martino

v. Carey, 568 F. Supp. 848, 850 (D. Or. 1983) ("Congress intended that courts award, generally,

the highest rate charged in the area for complex antitrust and commercial litigation").

Before analyzing statistical information about commercial litigation rates, I should

note that this Court has previously approved a rate reasonably comparable to what Ben Rosenthal

requests for a lawyer with experience comparable to Mr. Rosenthal. Specifically, in January,

2008, this Court awarded David Hosenpud, like Rosenthal a 1983 bar admittee, $355.50 an hour,

calling this "well within the range of fees customarily charged * * * based on the inflation

adjusted 2002 Economic Survey." Schumacher v. City of Portland, 2008 U.S. Dist. LEXIS 5443

at *23-25 (D. Or. 2008). In Schumacher, the evidence showed that Mr. Hosenpud's rate was

Page - 3  DECLARATION OF PHIL GOLDSMITH

"between the 75[th] and 95[th] percentile rate for business and corporate litigation attorneys" in the 2002 Bar survey. Id. at 23.  See also Kraft v. Arden, 2009 U.S. Dist. LEXIS 19445 at *20 (D. Or. 2009) (using 2007 bar survey adjusted for inflation, awarding $375 an hour to Keith Dubanevich, a lawyer with "twenty-five years of experience, including twenty years focusing on business litigation").

Previously, I have considered the surveys conducted by forensic accountant Serena Morones to be the best source of commercial litigation rates.  These surveys exclusively examine the rates charged by commercial litigation lawyers in the Portland metropolitan area. By contrast, the Oregon State Bar's general economic surveys simply calculate median and average rates of all lawyers in a particular geographical area with a certain level of experience without taking into consideration "important factors such as skill and reputation."  Miranda, supra, Opinion and Order (March 8, 2006) at 5.

To the extent the bar's general economic survey contains information about the rates of lawyers who handle "business/corporation - litigation," these rates on average are 15-20% higher.  For example, in the 2007 survey, the average rate for all Portland lawyers is $244, but the average rate for all Portland business/corporate - litigation lawyers is $283.  Oregon State Bar 2007 Economic Survey, 27, 29.[1]  Similarly, the median rate for all Portland lawyers is $230 but the median rate for all Portland business/corporate - litigation lawyers is $275.  Id.

However, that survey only provides the average, median, 25th, 75th and 95th percentile rates for business/corporate - litigation lawyers.  This data is not broken down by years of experience, which is one of the most significant factors in determining market rates.  See

---

[1]    This can be found at http://www.osbar.org/_docs/resources/07EconSurvey.pdf.

Page - 4  DECLARATION OF PHIL GOLDSMITH

BENJAMIN ROSENTHAL
Attorney at Law
1023 SW Yamhill St. Ste 200
Portland, OR 97205
(503) 226-6409

Memorandum from Dustin Dopps to Litigation Section Executive Committee dated October 30, 2008, 2 ("The data shows that hourly rates tend to increase $50 per hour on average for every 10 years of experience").[2]

Given Congress's specific reference to antitrust cases, the Oregon State Bar antitrust section's March, 2008 hourly rate fee survey is potentially a source for evaluating the reasonableness of Mr. Rosenthal's requested hourly rates. [3]  While that survey's statistical data also does not correlate hourly rates with years of experience, the survey nevertheless shows that the rate Mr. Rosenthal is requesting for his time is not inconsistent with prevailing market rates for antitrust litigation.

Specifically, of the 24 responses by litigators handling antitrust and unfair competition/unfair business practices cases, two-thirds (16) reported rates of $375 an hour or greater.  Antitrust Section Hourly Rate Survey Results, 4.  "The average and median hourly rate[s]" are reported to be "approximately $375 per hour," with "the average number of years spent in a practice area" being "23-25."  Id., 1-2.  According to his declaration, Mr. Rosenthal is now in his 23rd year handling employment litigation.

I also reviewed data from the Oregon State Bar's business litigation section's March 2008 survey correlating hourly rates with years of experience without breaking out rates for Portland area attorneys.[4]  For respondents with experience comparable to Mr. Rosenthal (26-

---

[2]        This can be found at
http://www.osbar.org/_docs/resources/HourlyRatesSurvey/Litigation/LitigationMemo.pdf.

[3]        This can be found at
http://www.osbar.org/_docs/resources/HourlyRatesSurvey/Antitrust/AntitrustReport.pdf.

[4]        I was provided this document by the Oregon State Bar in 2008.  On February 4, 2009, I visited

Page - 5  DECLARATION OF PHIL GOLDSMITH

BENJAMIN ROSENTHAL
Attorney at Law
1023 SW Yamhill St. Ste 200
Portland, OR 97205
(503) 226-6409

28 years), more than half (14 of 25) had rates of $375 an hour or greater, even though one-quarter are from outside the Portland metropolitan area where billing rates are lower. See Ex C. Thus, Mr. Rosenthal's requested rate is around the median of rates charged in 2008 by business litigation lawyers with 26-28 years experience throughout the state.[5]

I also reviewed the Oregon State Bar's civil rights section's March 2008 survey, but found it less helpful because it does not correlate hourly rates with years of experience.[6] It does show that ten of the 95 respondents (11%) billed $375 an hour or more, that 27 of the 103 respondents (about one-quarter) had 21 or more years experience in civil rights and employment litigation and that about one-quarter of the overall respondents (13 of 55) were from outside the Portland metropolitan area.[7] This data may be consistent with $375 an hour being at or near the median for a Portland area lawyer with 21 or more years of relevant experience, but the data are not sufficiently correlated to permit that inference to be made.

Now that these section rates are available, in my opinion they more accurately reflect relevant market rates than either of the categories (plaintiff civil litigation excluding

---

http://www.osbar.org/_docs/resources/HourlyRatesSurvey/BusinessLitigation/BusinessLitigation Experience.pdf expecting to find it. However, what appeared there is identical to a litigation section document, http://www.osbar.org/_docs/resources/HourlyRatesSurvey/Litigation/LitigationExperience.pdf, also visited February 4, 2010. I called this to the attention of the relevant state bar employee and was told that this error will be corrected.

[5]    Because this survey reports rates in $25 ranges (e.g. $375-399), it is not possible to calculate the average rate, only the median rate.

[6]    Available at http://www.osbar.org/_docs/resources/HourlyRatesSurvey/CivilRights/CivilRightsReport.pdf.

[7]    The survey does not explain why the number of respondents varied from question to question.

Page - 6  DECLARATION OF PHIL GOLDSMITH

personal injury and rates for all lawyers of a certain level of experience) employed by the court in

Dunn v. CSK Auto, Inc., 2006 U.S. Dist. LEXIS 82724 (D. Or. 2006). This district has always

recognized "that the prevailing market rate for attorneys with * * * expertise" could be

"considerably higher than the averages indicated in the economic survey." Kunnert v. Baker

County, Civil No. 02-0043-HA, Order dated January 7, 2005, 3-4 (awarding Tom Steenson $73

an hour more than the average rate for lawyers with similar experience given his "significant

expertise in the area of complex federal civil rights litigation" among other factors), attached as

Ex D.

When the section surveys were developed, I was a member of the Oregon State

Bar Consumer Section Executive Committee. I know from discussions with Oregon State Bar

employees and others that the section surveys were designed to determine whether the general

bar survey results accurately reflected market rates in specialty practice areas. See

http://www.osbar.org/surveys_research/08hourlyratesurvey, visited February 4, 2010 ("The goal

of the new survey was to find out how experience, geography and area of practice impact hourly

rates"). To the extent those specialty practice rates reflect the appropriate prevailing market rates

for this fee petition, they should be employed.

Because of this Court's expressed preference for use of bar survey data, I did not

engage Ms. Morones to determine the average rates as of January 1, 2008 in her survey for

Portland-area commercial litigation lawyers admitted in 1983. However, last year I served as the

attorney fee expert for Tom Spaulding, a lawyer admitted in 1981, in an Oregon state court case,

Bulow v. Estey, Multnomah County Circuit Court Case No. 0712-14608. Ms. Morones's survey

data showed that the average rate of the six lawyers in her data base who were admitted in 1981

Page - 7  DECLARATION OF PHIL GOLDSMITH

was $420 an hour.[8]

Based on the foregoing, it is my opinion that $375 an hour is within the range of market rates for commercial litigation lawyers who were admitted to practice in 1983.

It does not appear that defendant is challenging the $325 hourly rate of Meagan Flynn, a 1992 bar admittee. Accordingly, rather than engaging in an extended analysis of the various bar surveys, I will simply note that two years ago in <u>Valentine</u>, the Court approved a $325 hourly rate for 1991 bar admittee Michael Baxter as being "in line with fees customarily charged in Portland, Oregon, by attorneys with similar skill and experience in commercial litigation during the relevant time frame." 543 F. Supp. at 1235-1236. Given my knowledge of Ms. Flynn's work and her experience with punitive damage issues, it is my opinion that $325 an hour is an appropriate market rate for her services.

No bar survey addresses market rates for paralegal services, but the average rate as of January 1, 2008 of the 49 paralegals in Ms. Morones's survey is $154 an hour.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the date set forth below.

Signed this _4/5_ day of February, 2010 at Portland, Oregon.

Phil Goldsmith

---

[8]    <u>Bulow</u> settled while the fee petition was pending.

BENJAMIN ROSENTHAL
Attorney at Law
1023 SW Yamhill St. Ste 200
Portland, OR 97205
(503) 226-6409

**PHIL GOLDSMITH**
Law Office of Phil Goldsmith
1618 SW First Avenue, Suite 350
Portland, Oregon 97201
(503) 224-2301
FAX (503) 222-7288

## EDUCATION

J.D. - Yale University, 1978

B.A. - Stanford University, Phi Beta Kappa, 1974

High School - Tigard (Oregon) High School, Valedictorian, 1968

## LEGAL EMPLOYMENT

May, 1987 to present -- Law Office of Phil Goldsmith and predecessors

January, 1980 to April, 1987 -- Associate, Henry A. Carey, P.C.

August, 1978 to August, 1979 -- Staff Attorney, Oregon Legal Services, Albany Regional Office

December, 1973 to December, 1977 -- Various paralegal and law clerk positions in legal services programs and public law organizations

Since January, 1980, my practice has emphasized plaintiffs' complex business and consumer litigation and appellate work, including class actions, predatory lending cases and other individual consumer financial services litigation. Leading cases include:

Vasquez-Lopez v. Beneficial Oregon, Inc., Multnomah County Circuit Court Case No. 0210-10108, 210 Or App 553, 152 P3d 990 (2007). I was plaintiff's co-lead counsel in this predatory lending case which resulted in a jury verdict that included $500,000 in punitive damages upheld on appeal. The appeal also produced Oregon's first appellate ruling on unconscionability in the arbitration clause context.

Bruce v. EarthLink, Multnomah County (Oregon) Circuit Court Case No.0103-02958. I was co-lead counsel in this class action for customers of the former ISP Teleport, which resulted in a $2,000,000 settlement.

Hutson v. US Bank, National Association, Multnomah County (Oregon) Circuit Court Case No. 0004-03817. I was co-lead counsel in this class action under Oregon wage and hour law for persons employed in Oregon as personal bankers. While on appeal, this case settled on terms favorable to the plaintiff class.

Navarro-Rice v. First USA Bank, Multnomah County Circuit Court Case No. 9709-06901 and Rosted v. First USA Bank, No. C97-1482-L (WD Wash). I was one of plaintiffs' counsel in the nationwide class litigation challenging a credit card bait and switch scheme, which ultimately was settled with non-monetary class relief valued by the court as being in excess of $86 million.

EXHIBIT A
PAGE 1 OF 3

The Poplars Ranch, Inc. v. State of Oregon, Lake County (Oregon) Circuit Court Case No. L91-0640CV. I was plaintiffs' lead counsel in this class action that challenged changes made in the terms of loans from a state water development loan program. After the trial court entered a judgment in favor of the plaintiff class in excess of $2,000,000, the case settled with the defendant agreeing to pay the judgment.

Daggett v. Blind Enterprises of Oregon, Civil No. CV 95-421-ST (D Or). I was one of plaintiffs' counsel in this class action under the Fair Labor Standards Act and the Americans with Disabilities Act for blind former employees of the principal defendant. Shortly before trial, this case settled on terms favorable to the plaintiff class.

Association of Unit Owners of the Inn at Otter Crest v. Far West Federal Bank, 120 Or App 125, 852 P2d 218 (1993). I was plaintiffs' co-lead counsel in this complex litigation involving property interests at the Inn at Otter Crest, which was favorably settled after a successful appeal on time limitation issues.

Guinasso v. Pacific First Federal Savings & Loan Association, 656 F2d 1364 (9th Cir 1981), cert denied, 455 US 1082 (1982), subs op, 89 Or App 270, 749 P2d 577, rev den, 305 Or 678 (1988). I was plaintiffs' co-lead counsel in this class action which recovered nearly $2 million for a class of 11,000 home loan borrowers from Pacific First Federal, representing the earnings made by their tax and insurance reserves during the years 1969 through 1975.

Spexarth Land Co. v. State of Oregon, Marion County (Oregon) Circuit Court No. 86C 11889. I was plaintiffs' co-lead counsel in this complex litigation brought by the owners of a commercial office building against the State of Oregon resulting from the arbitrary non-renewal of a lease. A month before trial, this case settled on terms highly favorable to our clients.

Best v. United States National Bank, 78 Or App 1, 714 P2d 1049 (1986), aff'd, 303 Or 557, 739 P2d 554 (1987). I was co-lead counsel in this class action, settled after a favorable appeal, challenging bank NSF charges.

American Timber & Trading Co. v. First National Bank, Civil No. 70-687-RE, aff'd, 690 F2d 781 (9th Cir 1982). I had principal responsibility for portions of this complex usury class action, which resulted in a recovery of nearly a million dollars for the borrowers I represented.

## OTHER LEGAL EXPERIENCE

Recepient, 2007 Arthur H. Bryant Public Justice Award from the Oregon Trial Lawyers Association.

Speaker on predatory lending, credit card litigation, class action issues, arbitration and attorney fees topics, in Oregon and at National Consumer Law Center and National Association of Consumer Advocates conferences.

Mediator, Oregon Appellate Settlement Program. Also successfully mediated attorney fees petition in Marbet v. City of Portland, Ellis v. City of Portland, United States District Court Civil Nos. CV 02-1448-HA- LEAD and CV 03-1134-ST.

Coordinator, Committee to Reform Oregon's Class Action Rule (organization of lawyers and others which proposed revisions in ORCP 32, many of which were adopted by the 1993 Council of Court Procedures). Member, 2006 Council on Court Procedures workgroup on ORCP 32.

Member, National Association of Consumer Advocates Class Action Guidelines Revision Committee, which revised guidelines which were originally published at 176 FRD 375 (1997).

Member, 2008 Mortgage Lending Work Group convened by Oregon's Governor to help formulate legislation regulating mortgage origination for introduction in the 2009 Oregon legislature.

Member, Oregon Trial Lawyers Association Amicus Committee (1988-present, co-chair 1990-1995, 1998-2001); Portland Chapter, National Lawyers Guild Litigation Committee (1993-1995); Multnomah County Legal Aid Service Board of Directors (1994-1995); Oregon State Bar Consumer Law Section Executive Committee (2006-2009).

Admitted to:  Oregon State Bar (1978), United States District Court for the District of Oregon (1978), United States Court of Appeals for the Ninth Circuit (1980), United States Supreme Court (1981).

FILED'06 MAR 08 17:23USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JORGE MIRANDA and                          Civ. No. 04-CV-241 AA
IRENE MIRANDA,                             OPINION AND ORDER

      Plaintiffs,

    v.

CITY OF CORNELIUS and
ACME TOWING, INC.,

      Defendants.
_____

Spencer M. Neal
Oregon Law Center
921 SW Washington #516
Port.and, OR  97205
    Attorney for plaintiffs

Gerald L. Warren
280 Liberty Street SE, Suite 206
Salem, OR 97301
    Attorney for defendants

1    - OPINION AND ORDER

EXHIBIT  B
PAGE  1  OF  6

AIKEN, Judge:

Plaintiffs, having received judgment in their favor, move for an award of attorneys fees and costs in the amount of $17,235.57 pursuant to 42 U.S.C. § 1988 and Local Rule 54.4. For the reasons set forth below, plaintiffs' motion is granted.

## BACKGROUND

In February 2004, plaintiffs filed suit against defendants for violation of plaintiffs' Fourth and Fourteenth Amendment rights. Plaintiffs' vehicle had been towed from the driveway of their home pursuant to a city ordinance authorizing tows when a driver is cited for driving without an operator's license. On January 9, 2006, this court entered judgment in plaintiffs' favor for $3000 plus reasonable attorneys fees and costs incurred prior to December 23, 2005, in an amount to be stipulated by the parties or to be determined by the court if the parties could not agree. On January 20, 2006, plaintiffs moved for attorneys fees and costs in the amount of $17,235.57.[1]

## STANDARDS

A determination of a reasonable attorney's fee begins with the

---

[1] Plaintiffs also seek an order of $13,817 in appellate attorney's fees and costs from the Ninth Circuit Court of Appeals. Defendants ask this court to wait until the Ninth Circuit determines whether to remand the issue to this court so as to avoid inconsistent rulings on a reasonable hourly rate. I find such a delay unnecessary. If the Ninth Circuit ultimately decides to transfer the issue to this court, I will consider the appellate attorney's fees at that time.

2 - OPINION AND ORDER

EXHIBIT B
PAGE 2 OF 6

"lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 J.S. 546, 563-64 (1986). Plaintiff carries the burden of proving the lodestar. Id. A few of the factors considered include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the customary fee; (5) the amount involved and the results obtained; and 6) the experience, reputation and ability of the attorneys. See Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975) (outlining twelve factors bearing on reasonableness). Only those factors which are applicable need be addressed. Sapper v. Lenco Blade, Inc., 704 F.2d 1069 (9th Cir. 1983).

The court may adjust the lodestar downward if the plaintiff has achieved only partial or limited success, Hensley v. Eckerhart, 461 U.S. 424, 435 (1983), or upward in "rare" and "exceptional" cases, Delaware Valley, 478 U.S. at 565. However, there is a strong presumption that the lodestar figure represents a reasonable fee. Miller v. L.A. County Bd. of Educ., 827 F.2d 617, 621 (9th Cir. 1987).

DISCUSSION

Plaintiffs are seeking attorney's fees for a total of 88.6 hours: 49.6 hours for the lead attorney, Spencer Neal, and 39 hours for Mr. Neal's law clerk. The hourly rates sought for this

3   - OPINION AND ORDER

EXHIBIT  B
PAGE  3  OF  6

work are $295 and $60, respectively. Some of the services performed include legal research, meeting with co-counsel and plaintiffs, and preparing and litigating three motions, including cross-motions for summary judgment.

Defendants object to plaintiffs' request on the following grounds: (1) Mr. Neal used "block billing," which does not reasonably identify the tasks performed; (2) Mr. Neal is charging for an unreasonable number of hours; and (3) Mr. Neal's requested hourly rate of $295 exceeds the prevailing market rate in the community and should be placed in the range of $230 to $240 per hour.[2] I disagree with each of defendants' objections.

First, the time records submitted by plaintiffs clearly reveal the nature of the work performed by Mr. Neal and his law clerk. Defendants fail to define "block billing" and do not cite any specific entries that they argue were block-billed. Contrary to defendants' assertion, the majority of Mr. Neal's entries are in small increments of less than one hour, and each entry clearly identifies the work performed.

Second, the amount of hours that Mr. Neal spent working on this case was reasonable. As the Ninth Circuit Court of Appeals noted, this case consisted of "unusual facts" presenting a "novel question" of law. Miranda v. City of Cornelius, 429 F.3d 858, 867

---

[2] Defendants do not object to the hourly rate requested for Mr. Neal's law clerk and do not outline any specific objections to the number of hours the law clerk spent on this case.

4    - OPINION AND ORDER

EXHIBIT B
PAGE 4 OF 6

(9th Cir. 2005). Thus, it was reasonable for Mr. Neal to spend 49.6 hours performing tasks such as researching potentially relevant case law, reviewing and revising his law clerk's work, and responding to defendants' various motions.

Finally, I find that the rate of $295 sought by plaintiffs for Mr. Neal's time is reasonable. To determine the appropriate hourly rate, the court considers the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Plaintiffs have submitted several affidavits and declarations discussing the current market rate for experienced trial attorneys in this community practicing in specialized areas of law. Those hourly rates range from a low of $250 per hour to a high of more than $400 per hour.

In response, defendants rely solely upon the 2002 Oregon State Bar Economic Survey, which accounts only for the attorney's years of experience rather than important factors such as skill and reputation. Furthermore, the survey includes hourly rates for attorneys who are part-time due to lack of legal work. Inclusion of these attorneys in the survey results in an underestimation of the prevailing market rate for skilled full-time attorneys with good reputations. See Affidavit of Phil Goldsmith, p. 5. (noting that attorneys lacking the skill and reputation to attract sufficient work at the prevailing rates will charge lower rates to obtain work). Given the bar survey's outdated figures and lack of

5   - OPINION AND ORDER

EXHIBIT B
PAGE 5 OF 6

consideration for skill and reputation, it is of limited value in this case.

Plaintiffs have presented ample evidence that their requested hourly rate is reasonable and customary for attorneys in the Portland, Oregon, area in light of the specialized nature of the work involved and Mr. Neal's skill, reputation, and experience. Therefore, I find that $295 is a reasonable hourly rate for Mr. Neal's services.

## CONCLUSION

Plaintiffs' motions for attorney's fees and costs (docs. 56 and 57) are granted against defendants in the amount of $17,194.00 [(49.6 hours x $295) + (39 hours x $60) + $222 costs].

IT IS SO ORDERED.

Dated this ___6___ day of March, 2006.

_____
Ann Aiken
United States District Judge

6    - OPINION AND ORDER

EXHIBIT ___B___
PAGE _6_ OF _6_

**What region (county) is your office in?**

| Answer Options | Response Percent | Response Count |
|---|---|---|
| Downtown Portland | 25.0% | |
| Tri-County area (Washington, Multnomah, Clackamas) | 12.5% | |
| Oregon Coast (Columbia, Clatsop, Tillamook, Lincoln) | 0.0% | |
| Upper Willamette Valley (Yamhill, Polk, Marion) | 6.3% | |
| Lower Willamette Valley (Benton, Linn, Lane) | 12.5% | |
| Southern Oregon (Douglas, Josephine, Jackson) | 0.0% | |
| Central Oregon (Deschutes, Crook, Jefferson) | 0.0% | |
| Eastern Oregon (all other Oregon counties) | 0.0% | |
| answered question | | |
| skipped question | | |

**What size is your firm?**

| Answer Options | Response Percent | Response Count |
|---|---|---|
| Sole practitioner | 6.3% | |
| 2-5 Attorneys | 25.0% | |
| 6-10 Attorneys | 0.0% | |
| 11-15 Attorneys | 18.8% | |
| 16-20 Attorneys | 18.8% | |
| 21-25 Attorneys | 0.0% | |
| 26-30 Attorneys | 0.0% | |
| 31-35 Attorneys | 18.8% | |
| 36-40 Attorneys | 0.0% | |
| 41-45 Attorneys | 0.0% | |
| 46-50 Attorneys | 0.0% | |
| 51-75 Attorneys | 12.5% | |
| 76-100 Attorneys | 0.0% | |
| 101+ Attorneys | 18.8% | |
| answered question | | |
| skipped question | | |

**Percent of practice devoted to this type of case?**

| Answer Options | % of Total |
|---|---|
| Antitrust | |
| Securities | |
| Intellectual Property | |
| Business | |
| Bankruptcy | |
| TOTALS | |

**Number of years handling this type of case**

| Answer Options | % of Total |
|---|---|
| Antitrust | |
| Securities | |
| Intellectual Property | |
| Business | |
| Bankruptcy | |
| TOTALS | |

**Hourly rate charged for this type of case**

| Answer Options | % of Total |
|---|---|
| Antitrust | |
| Securities | |
| Intellectual Property | |
| Business | |
| Bankruptcy | |
| TOTALS | |

EXHIBIT C
PAGE 1 OF 1



RECEIVED
JAN 1 2 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KEVIN KUNNERT,

              Plaintiff,              Civil No. 02-0043-HA

      v.

                                  ORDER

BAKER COUNTY, SHARON BASS,
TAMMY BLOOMER, CLACKAMAS COUNTY,
LORI VICARS and CLARA STONER,

              Defendants.

HAGGERTY, Chief Judge:

On August 20, 2004, judgment was entered awarding damages to plaintiff in the

amount of $40,000 against defendants Clackamas County, Lori Vicars and Clara Stoner

(herein referred to as the Clackamas County defendants or defendants). Plaintiff's claims

EXHIBIT D
PAGE 1 OF 7

against defendants Baker County, Sharon Bass, and Tammy Bloomer (the Baker County defendants) were dismissed with prejudice.

Before the court is plaintiff's Motion for Attorney Fees and Litigation Expenses (Doc. #143) and Supplemental Motion for Additional Award of Attorney Fees (Doc. #162).

## PROCEDURAL MATTERS

In defendants' Memorandum in Opposition to Petition for Attorney Fees, defendants included information about plaintiff's settlement demands prior to trial. Defs.' Mem. in Opp. at 8. In response, plaintiff filed a Motion to Strike Evidence of Settlement Discussions Prior to Trial (Doc. #160) based on Federal Rule of Evidence 408.

Because the court does not rely on the information that is the subject of the Motion to Strike, that motion is denied as moot.

## DISCUSSION

Defendants do not dispute that plaintiff is the prevailing party. Plaintiff seeks a total award of attorney fees and costs in the amount of $92,674.07. This amount reflects $81,452.20 requested in plaintiff's initial motion for attorney fees and $11,221.87 requested in plaintiff's supplemental motion. The court has reviewed plaintiff's motions and the opposing brief and determines that $74,649.07 is a reasonable award of fees and costs, reflecting $72,100 in attorney fees and $2,549.07 in costs.

1. Rates charged by Steenson and Tewksbury

Plaintiff seeks $58,950 for Tom Steenson (Steenson), reflecting 196.5 hours at a rate of $300 per hour. Plaintiff seeks $11,475 for Zan Tewksbury (Tewksbury), reflecting 51 hours at a rate of $225 per hour. Despite conceding that plaintiff's counsel is entitled to be compensated at current hourly rates for services rendered in the past, defendants argue that

these hourly rates are unreasonable. Defendants argue that Steenson's rate should be $250 per hour and Tewksbury's rate should be $215 per hour. For the reasons provided below, the court finds in favor of plaintiff.

The Ninth Circuit has articulated how a district court should go about determining a reasonable attorney fee award. Following Supreme Court precedent, the court in *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995), stated that "the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining what constitutes a reasonable hourly rate, the court should consider such factors as the time and labor required, the customary fee, the attorney's experience and skill, the amount involved, and the results obtained. *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975)).

Defendants argue that a rate of $300 for Steenson is unreasonable because it is higher than the average rate for attorneys with a similar number of years of experience, as indicated by the Oregon State Bar's 2002 Economic Survey. *Oregon State Bar 2002 Economic Survey, available at* http://www.osbar.org/surveys_research/snrtoc.html (September 2002). The survey indicates that in 2001 the average billing rate for someone with Steenson's experience, between 21 and 30 years of practice, was $227. In 2001, Steenson's billing rate was $250.

If the requested rate is higher than the average, the plaintiff must produce evidence that the requested rate is "in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). Plaintiff has met this burden by showing that the

prevailing market rate for attorneys with Steenson's levels of expertise is considerably higher than the averages indicated in the economic survey. Steenson Aff. ¶ 10. Steenson has practiced law for over 30 years and has significant expertise in the area of complex federal civil rights litigation. Steenson Aff. ¶ 1-8. He earns a premium for his skill, level of expertise, and reputation for obtaining favorable results. *Id.* Furthermore, the difficulty of the current case, the favorable results achieved, and the value to society support Steenson's rate. Therefore, the court finds that $300 is a reasonable rate for Steenson.

Tewksbury has been practicing law for over 13 years and has been working closely with Steenson, and exclusively in the area of civil rights, for over 10 years. Tewksbury Aff. ¶ 1-3. Having appeared as counsel in over 200 civil rights cases, she enjoys a significant level of expertise in this complex and specialized field. *Id.* The difficulty of this case, the favorable results achieved, and the value to society also support her rate of $225 per hour. Therefore, the court finds that $225 is a reasonable rate for Tewksbury.

3. Hours billed by Steenson and Tewksbury

Defendants argue that the hours submitted for Steenson and Tewksbury are excessive because (1) an earlier draft petition for attorney fees indicated that Tewksbury sought reimbursement for 23 hours, while plaintiff's motion to the court requests 45.5 hours, and (2) Steenson and Tewksbury duplicated their efforts from January 29, 2003 through April 30, 2003. Defendants argue that Tewksbury's hours should be reduced by 22.5 hours and Steenson's hours reduced by 21.8 hours.

As to defendant's first argument, plaintiff's counsel states that the 22.5 hours (the difference between 23 and 45.5) shown on the draft petition was the result of a typographical error. Reply Mem. in Supp. of Pl.'s Mot. for Award of Att'y Fees and

Litigation Expenses/ Costs at 8 n.9; Second Steenson Aff. ¶ 3. There is no evidence that plaintiff's counsel failed to keep contemporaneous records of their time, and they have fully documented all of the hours attributed to Tewksbury. Tewksbury Aff. ¶ 4, Ex. A1. These hours were neither excessive nor unnecessary. Therefore, the court finds that 51 hours attributable to Tewksbury is reasonable.

As to the alleged duplication of efforts, plaintiff's counsel submitted a second affidavit detailing the tasks completed by Steenson and Tewksbury between January 29, 2003 and April 30, 2003. Second Steenson Aff. ¶ 4. The court is satisfied that these hours were neither duplicative nor excessive.

Defendants also argue for a 25 percent reduction in hours due to plaintiff's limited success in failing to establish liability against defendants Baker County, Sharon Bass, and Tammy Bloomer. They argue that they should not pay fees accrued in litigating unrelated, unsuccessful claims. While this principle is correct, it is not applicable here.

"Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). Claims are considered "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Id.* (citation omitted). Here, plaintiff prevailed against all three Clackamas County defendants on its Fourth Amendment and state law claims. These claims were not "unrelated" to those asserted against the Baker County defendants; they were identical claims arising out of the same event. Therefore, the court finds that there is no basis for a reduction due to limited success.

Defendants also argue for a reduction in the lodestar amount because plaintiff's recovery amount, $40,000, is lower than the amount of damages plaintiff sought at trial. At

EXHIBIT D
PAGE 5 OF 7

5

trial, plaintiff sought an award of $125,000, while defendants argued for an award of $1,500. Plaintiff achieved a high level of overall success in this civil rights action, and his attorneys should recover a fully compensatory fee. *See City of Riverside v. Rivera*, 477 U.S. 561, 582, 585 (1986) (affirming award of $245,456.25 in a police misconduct case where plaintiffs prevailed on only some claims against some of 32 named defendants and received a total damage award of $33,350).

### 3. Rates and hours attributable to Creighton and Rose

Beth Creighton (Creighton) requests attorney fees in the amount of $1,225, which reflects seven hours at a rate of $175 per hour. Michael Rose (Rose) requests attorney fees in the amount of $450, which reflects 1.8 hours at a rate of $250 per hour. Defendants do not dispute these amounts. The court has reviewed these submissions in light of the relevant factors enumerated by the Ninth Circuit in *McGrath* and accepts these hours and rates.

### 4. Multiplier

Plaintiff argues that this award for attorney fees should be enhanced by a multiplier of 1.25 due to the delay caused by defendants' appeal of this action. That request is denied. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835-836 (1990) ("[T]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant.") (citation omitted).

### 5. Costs

Plaintiff seeks $2,549.07 in litigation costs. Defendants do not object. The court finds that these costs are of the type normally billed to fee-paying clients and were reasonably incurred.

EXHIBIT D
6 OF 7

6

## CONCLUSION

For the aforementioned reasons, plaintiff's Motion for Attorney Fees (Doc. #143) and Supplemental Motion for Attorney Fees (Doc. #162 are GRANTED. Plaintiff is entitled to recover an award of $72,100 in attorney fees and $2,549.07 in costs from defendants Clackamas County, Lori Vicars, and Clara Stoner. Plaintiff's Motion to Strike (Doc. #160) is DENIED as moot.

IT IS SO ORDERED.

DATED this _7____ day of January, 2005.


/s/Ancer L.Haggerty

ANCER L. HAGGERTY
United States District Judge

XHIBIT  D
PAGE 7 OF 7

7

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2010  I electronically filed the foregoing **DECLARATION OF PHIL GOLDSMITH IN SUPPORT OF PLAINTIFF'S STATEMENT OF ATTORNEY FEES AND COSTS**  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Clarence Belnavis
Jennifer Nelson
Fisher & Phillips LLP
111 SW Fifth Avenue, Suite 1250
Portland, OR 97204
Fax: 503-242-4263
Email: cbelnavis@laborlawyers.com
Email: jnelson@laborlawyers.com


/s/ *Brooke Zimet*
Legal Assistant to Benjamin Rosenthal, OSB 830828

Page - 5 - DECLARATION OF STEPHEN L. BRISCHETTO IN SUPPORT OF
PLAINTIFF'S COST BILL AND FEE PETITION

BENJAMIN ROSENTHAL
Attorney at Law
1023 SW Yamhill St. Ste 200
Portland, OR 97205-2536
(503) 226-6409