IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**DANIEL ORME**,

   Plaintiff,

  v.

**BURLINGTON COAT FACTORY
OF OREGON, LLC et al.**,

   Defendants.

No. CV 07-859-MO

OPINION & ORDER

**MOSMAN, J.**,

  Plaintiff Daniel Orme brought this suit against his former employer, defendant Burlington Coat Factory, alleging retaliation in response to Mr. Orme's complaint of race discrimination. Following trial, a jury found for Mr. Orme and awarded him $33,500.00 in non-economic damages and $375,000.00 in punitive damages. I denied Mr. Orme's equitable claims for economic damages following a court trial on September 2, 2009. Both parties filed post-judgment motions. I denied each of the post-judgment motions except defendants' Motion for Judgment as a Matter of Law on Punitive Damages, which I granted in part and denied in part, reducing Mr. Orme's punitive damage award to $167,500.00. (*See* Mins. of Proceedings Jan. 5, 2010 (#158).) Mr. Orme now seeks $160,658.13 in attorney fees and $7941.03 in costs.[1] (Pl.'s

---

[1] I calculate Mr. Orme's attorney fee request slightly differently than the amount listed in his Supplemental Petition, presumably due to minor mathematical errors. (*See* Rosenthal Decl. (#143) ¶ 2; Rosenthal Decl. (#160) ¶ 3 (Rosenthal = $118,620 + $14,013.75 (not $14,148.75 as listed) for 353.69 hours; Nunnenkamp = $7510 for 75.1 hours; Scheewe = $11,130 for 74.2 hours; Flynn = $9384.38 for 28.875 hours; Total = $160,658.13 for 531.865 hours).)

Am. Supplemental Petition for Fees and Costs (#162) 3.) For the reasons below, I grant in part and deny in part the request for fees, and award plaintiff $112,604.75 in fees and $7536.06 in costs.

## DISCUSSION

I. **The Lodestar Standard for Recovery of Attorney Fees**

The baseline method for determining a reasonable fee under federal fee shifting statutes such as the one relevant here, 42 U.S.C. § 1988, is to determine the hours reasonably worked and multiply that by a reasonable hourly rate. *See, e.g.*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). Under plaintiff's calculations, this lodestar method results in 531.87 hours worked by two attorneys, one paralegal, and one legal assistant at rates ranging from $100 to $375 an hour. (Rosenthal Decl. (#143) ¶ 2; Rosenthal Decl. (#160) ¶ 3.)

A.    *Reasonableness of the Hourly Rates*

Plaintiff urges me to compensate his primary counsel, Mr. Rosenthal, at an hourly rate of $375; counsel who assisted in briefing the post-judgment punitive damages response, Ms. Flynn, at an hourly rate of $325; Mr. Rosenthal's paralegal, Ms. Scheewe, at an hourly rate of $150; and Mr. Rosenthal's former legal assistant, Ms. Nunnenkamp, at an hourly rate of $100. (*See* Pl.'s Petition for Att'y Fees and Mem. in Support (#141) 3; Rosenthal Decl. (#160) ¶ 3.)

Well-settled law counsels that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate. . . . The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-63 (9th Cir. 1987) (citing *Blum v. Stenson*, 465

PAGE 2—OPINION AND ORDER

U.S. 886, 895-97, 895 n.11 (1984)). With this standard in mind, I address each person's proposed hourly rate below.

### 1.    Mr. Rosenthal's Rate

In a sworn declaration, Mr. Rosenthal describes his twenty-seven years of experience, having been admitted to the Oregon State Bar in 1983. (Rosenthal Decl. (#143) ¶ 7.) In particular, he began litigating plaintiffs' employment actions in 1987 and continues to practice employment law today. (*Id.*) In support of his hourly rate and the initial fee petition in this action, Mr. Rosenthal points to the hourly rates of four other employment attorneys in the community with twenty-five to thirty-two years of experience, who charge between $365 and $450 an hour, concluding that "[m]y rate of $375.00 per hour is average given the prevailing market rates in the Portland Area for attorneys at my level of expertise and years of practice." (*Id.* at ¶ 6.) Without explaining how it affects his "average" rate, Mr. Rosenthal also provides the results of an Oregon State Bar 2008 Civil Rights Section Survey ("OSB 2008 Civil Rights Survey"), which shows that only 5% of respondents reported an hourly rate between $375 and $399. (*Id.* Ex. 2 at 4.) The survey concludes that the "average and median hourly rate for Civil Rights lawyers is approximately $250 per hour." (*Id.* Ex. 2 at 2.)

In response, defendants argue that Mr. Rosenthal's rate of $375 is excessive and urge me to use a rate of $259, which defendants obtained by referencing two categories of the Oregon State Bar 2007 Economic Survey ("OSB 2007 Survey")—(1) the average hourly rate charged by an attorney practicing twenty-one to thirty years in Portland ($277) and (2) the average hourly rate charged by attorneys practicing civil litigation (representing plaintiffs) in Portland ($240). (Defs.' Resp. (#165) 3; *see also* Oregon State Bar 2007 Economic Survey 28, 30 (Dec. 2007),

PAGE 3—OPINION AND ORDER

http://www.osbar.org/_docs/resources/07EconSurvey.pdf.) Defendants note that the $259 hourly rate more closely resembles the average rate charged by civil rights litigators, as reflected in the OSB 2008 Civil Rights Survey. (Defs.' Resp. (#165) 3-4.) They further contend that Mr. Rosenthal's conduct throughout the case "further militates against" recovery of the higher rate. (*Id.* at 4.)

In reply, Mr. Rosenthal primarily argues that I should rely on the declaration of a Portland business litigation attorney (specializing in class action and financial institution litigation), retained as an expert in this fee dispute, who "opines that a reasonable hourly rate be based on the rate charged in the area for complex antitrust and commercial litigation." (Pl.'s Reply (#178) 5.) In support of his opinion to this effect, Mr. Phil Goldsmith argues that "Congress directed that civil rights attorney fees awarded pursuant to 42 U.S.C. § 1988 'be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" (Goldsmith Decl. (#181) 3 (citing congressional legislative history as quoted in *Blum*, 465 U.S. at 893).)

The remainder of Mr. Goldsmith's declaration analyzes the reasonableness of Mr. Rosenthal's hourly rate in light of commercial litigation rates, which he admits garner a 15-20% premium over other hourly rates in Portland as demonstrated in the OSB 2007 survey. (*Id.* at 4.) Mr. Goldsmith focuses on the hourly rates of litigators practicing antitrust, unfair competition, and general business litigation, using both the OSB 2007 survey and independent forensic accounting surveys that "exclusively examine the rates charged by commercial litigation lawyers in the Portland metropolitan area." (*Id.* at 4-5). He concludes that Mr. Rosenthal's $375 rate "is within the range of market rates for commercial litigation lawyers who were admitted to practice

in 1983." (*Id.* at 8.) Mr. Rosenthal also presents declarations from three employment law attorneys who all opine that Mr. Rosenthal's rate of $375 is reasonable. (*See* Pl.'s Reply (#178) 6; Brischetto Decl. (#180); Morrell Decl. (#182); Paul Decl. (#184).)

Taken independently, several of Mr. Goldsmith's statements may be factually accurate. For example, civil rights attorney fees are, in fact, "governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." (*See* Goldsmith Decl. (#181) 3.) This "standard" that applies to many types of complex federal litigation is simply the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Additionally, Mr. Rosenthal's hourly rate of $375 may well be "within the range of market rates for commercial litigation lawyers." (*See* Goldsmith Decl. (#181) 8.) But Mr. Rosenthal is not a commercial litigator, nor does he practice in the areas of antitrust or unfair competition law. Rather, he has more than twenty years of experience as a civil rights litigator, specializing in employment law. His baseline is the rate of an experienced civil rights and employment lawyer, not an experienced commercial litigator.

Therefore, I am back to the beginning, instructed by the Supreme Court, the Ninth Circuit, and this District to assess the reasonableness of Mr. Rosenthal's proposed hourly rate in light of prevailing market rates of other civil rights litigators practicing in Portland and rates of attorneys with approximately twenty-seven years of experience. As this District's Local Rules provide, I begin by looking at the OSB 2007 Survey. (*See* Practice Tip to L.R. 54-3.) The average billing rate by Portland attorneys in private practice is $244. (OSB 2007 Survey, *supra*, at 27.) Further, as defendants point out, the average billing rate by Portland attorneys admitted to

PAGE 5—OPINION AND ORDER

practice for twenty-one to thirty years is $277, and the average rate for plaintiffs' civil litigators in Portland is $240. (*Id.* at 28, 30.) While the 75th and 95th percentile numbers demonstrate the higher-than-average fees billed by some attorneys (*see id.*), Mr. Rosenthal has not argued that his rate is appropriately placed in one of these higher categories—rather, he refers to his own rate as "average given the prevailing market rates in the Portland Area for attorneys at my level of expertise and years of practice." (Rosenthal Decl. (#143) ¶ 6.) Defendants urge me to take the average of the two applicable rates—$277 and $240—for an hourly rate of $259. (Defs.' Resp. (#165) 3.) While this is a useful starting point, I find that it inadequately takes into account Mr. Rosenthal's twenty-seven years of practice and rate increases since 2007 (the year this case was filed). Taking these additional factors into account, I find Mr. Rosenthal's reasonable hourly rate to be $275.

      Mr. Rosenthal contends that his usual practice of taking cases on a contingent-fee basis supports a higher fee. (*See* Pl.'s Reply (#178) 6.) The lodestar hourly rate is presumed sufficient, and "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar." *Perdue v. Kenny A. ex rel. Winn*, --- S.Ct. ----, No. 08-970, 2010 WL 1558980, at *3 (Apr. 21, 2010). In particular, the Supreme Court and the Ninth Circuit have specifically foreclosed enhancements to the lodestar for contingent-fee cases. *See City of Burlington v. Dague*, 505 U.S. 557, 562-67 (1992) (discussing that enhancement for contingency under fee-shifting statutes is inappropriate). In *Stewart v. Gates*, 987 F.2d 1450 (9th Cir. 1993), the Ninth Circuit noted that "[w]e have, however, prohibited one *Kerr* factor, whether the fee is fixed or contingent, from playing any role in determining the basic fee." 987 F.2d at 1453 (citing *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part*,

PAGE 6—OPINION AND ORDER

984 F.2d 345 (9th Cir. 1993)). Nor may a fee applicant rely on many of the *Kerr* factors to enhance the basic fee—"[f]or example, enhancement for contingent risk of nonpayment of fees is not permitted." *Id.* (citing *Dague*, 505 U.S. at 565-66). *But see Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) (noting that the district court "properly considered . . . that counsel was to be compensated only if the lawsuit was successful" in determining the hourly rate in a civil rights case).

        2.        **Ms. Flynn's Rate**

In a sworn declaration, Ms. Flynn describes her eighteen years of experience, having been admitted to the Oregon State Bar in 1992. (Flynn Decl. (#161) ¶ 3.) Her involvement in this case was limited to drafting plaintiff's Response (#151) to defendants' Motion for Judgment as a Matter of Law on Punitive Damages (#136). (Flynn Decl. (#161) ¶ 1.) She contends, without objection from defendants, that her experience warrants a $325 hourly rate, in the top 25% of fees charged by Portland attorneys with sixteen to twenty years of experience. (*See id.* ¶ 7; OSB 2007 Survey, *supra*, at 28.) I therefore find that Ms. Flynn's reasonable hourly rate is $325.

        3.        **Ms. Scheewe's Rate**

In a sworn declaration, Mr. Rosenthal describes that Ms. Scheewe is a certified paralegal with eight years of experience. (Rosenthal Decl. (#143) ¶ 9.) He contends that Ms. Scheewe's experience warrants an hourly rate of $150, and defendants do not object. I find that a rate of $150 is reasonable under the lodestar analysis.

        4.        **Ms. Nunnenkamp's Rate**

In a sworn declaration, Mr. Rosenthal describes that Ms. Nunnemkamkp charges an hourly rate of $100, which is the rate Mr. Rosenthal ordinarily bills for legal assistant work. (*Id.* ¶

8.) Defendants primarily object to the inclusion of *any* work done by Ms. Nunnenkamp, which they contend is secretarial or clerical work not properly included in a fee request. (Defs.' Response (#165) 4-5.) This issue is addressed below. Otherwise, defendants allege that Mr. Rosenthal's declaration provides no basis by which to determine the reasonableness of Ms. Nunnenkamp's rate. (*Id.* at 5.) In reply, Mr. Rosenthal clarifies that Ms. Nunnenkamp has been a certified paralegal for eight years. (Pl.'s Reply (#178) 4-5; Nunnenkamp Decl. (#183) ¶ 3.) Any portion of Ms. Nunnenkamp's time that is properly recoverable will be calculated at the hourly rate of $100, which is reasonable under the lodestar analysis.

### B. *Hours Reasonably Expended*

Defendants challenge the reasonableness of the hours presented by plaintiff, alleging that the petition "is replete with inadequate detail, block and duplicative billing, and an exorbitant amount of time billed to clerical tasks." (Defs.' Resp. (#165) 1.)

The fee claimant bears the burden to demonstrate that the number of hours spent was "reasonably expended on" the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).

#### 1. Clerical or Administrative Tasks

Costs associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *Confederated Tribes of Siletz*

*Indians of Oregon v. Weyerhaeuser Co.*, No. CV-00-1693-AA, 2003 WL 23715982, at *2 n.3 (D. Or. Oct. 27, 2003), *vacated on other grounds*, 549 U.S. 312 (2007) ("The reason secretarial costs ordinarily are not compensable is because the prevailing practice in the community is to include such costs within the overhead subsumed by the attorney's hourly rate."); *see also Jacobs v. Local Union 48, Int'l Bhd. of Elec. Workers*, No. CV-94-1544-HU, 2002 WL 31470403, at *3 (D. Or. Mar. 21, 2002); *Frevach Land Co. v. Multnomah County, Dep't of Envtl. Servs., Land Use Planning Div.*, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001).

Defendants identified 169 individual billing entries they contend are clerical in nature. (Defs.' Resp. (#165) 7-24.) Many of these entries list "sec" as the biller, indicating work performed by Mr. Rosenthal's legal assistant, Ms. Nunnenkamp. (*See* Rosenthal Decl. (#143) ¶¶ 2, 8.) Mr. Rosenthal argues that "[c]harges for secretarial and legal assistant time, postage, and photocopying charges are appropriate to consider in determining a proper attorney fee."[2] (*Id.* ¶ 8 (citing *Willamette Prod. Credit Ass'n v. Borg-Warner Acceptance Corp.*, 706 P.2d 577, 579-80 (Or. App. 1985); *see also* Pl.'s Reply (#178) 5).) In *Willamette Production*, the parties settled their state law claims and, as part of the compromise, defendants agreed to pay costs and attorney fees. 706 P.2d at 578. When the plaintiff filed a cost bill requesting the fees, defendants objected on numerous grounds, including an objection to "charges for secretarial and legal assistant time,

---

[2] Plaintiff later characterizes defendants' request to eliminate recovery of clerical tasks as one to "deny recovery of Ms. Nunnenkamp's time because she was not adequately trained as a Paralegal." (Pl.'s Reply (#178) 4.) I disagree with that characterization of defendants' argument. Furthermore, Ms. Nunnenkamp's training as a paralegal is insignificant in determining whether the clerical tasks she performed in her capacity as a legal assistant are properly recoverable. Despite her paralegal training, Mr. Rosenthal repeatedly refers to her as a "legal assistant," "assistant," and "sec[retary]." (*See* Rosenthal Decl. (#143) ¶¶ 2, 8; Ex. 1.) I again note the *Jenkins* Court's guidance that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Jenkins*, 491 U.S. at 288 n.10.

PAGE 9—OPINION AND ORDER

photocopying charges, long distance telephone charges and postage." *Id.* at 579. The Oregon Court of Appeals allowed the overhead expenses based on counsel's explanation that the firm's billing system attributed overhead expenses directly to clients, rather than incorporating such overhead expenses in the attorneys' hourly rates, resulting in an "hourly rate of attorneys in the firm [that] is lower than those in comparable law firms" by 15-17%. *Id.* at 579-80.

Here, Mr. Rosenthal makes only half the argument necessary to compare this case to *Willamette Production*. He is correct that the "billed secretarial time" is "attributed specifically to the client" in the entries submitted. (Pl.'s Reply (#178) 5.) He makes no argument, however, that his billing practices *remove* such overhead costs from his own hourly rate in order to capture them separately. The standard presumption, as well as the evidence in this case, strongly suggests that overhead costs are already captured in the reasonable hourly rate. I find that defendants are correct in most of their objections and therefore reduce Mr. Rosenthal's hours by 0.8, Ms. Nunnenkamp's hours by 45.1, and Ms. Scheewe's hours by 33.8 for clerical work.

        2.        **Inadequate Detail**

A fee claimant must provide enough detail for the court to determine whether the time spent on a task was reasonable. Defendants claim that plaintiff "submitted a large number of entries from which it is impossible to tell whether the time sought was reasonably spent or could reasonably be shifted to Defendant." (Defs.' Resp. (#165) 6.) Specifically, defendants identify 112 entries they contend provide inadequate detail. (*Id.* at 7-24.) In reply, Mr. Rosenthal submitted original handwritten time entries, from which daily computer-generated documents are produced, as well as typed responses to the individual entries challenged by defendants as block billed or insufficiently detailed. (Rosenthal Decl. (#179) ¶¶ 2-3; Exs. 1-3.) Initially, I note that

PAGE 10—OPINION AND ORDER

many of defendants' objections based on inadequate detail coincide with entries for clerical tasks, which have already been removed. Otherwise, I find that most of defendants' objections based on inadequate detail, particularly relating to Mr. Rosenthal's entries, are without merit. For example, defendants object to nearly every entry where Mr. Rosenthal indicates a phone call to the plaintiff, though I am confident that conversations taking place centered on the case, strategy, status, and what to expect, and I do not find any entries reflecting an unreasonable amount of time spent communicating with his client. Defendants also contend that each entry noting attendance at court for trial is insufficiently detailed. Because I was also present at the trial, I conclude that the hours expended were reasonable.

      **3.**      **Block Billing**

"'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554, n.15 (10th Cir. 1996)).[3]

Defendants contend that eighteen of the submitted entries contain block billing. (Defs.' Resp. (#165) 6-24.) Again, Mr. Rosenthal relies on the original handwritten time entries and individual typed responses to the entries challenged by defendants. (Rosenthal Decl. (#179) ¶¶ 2-3; Exs. 1-3.) To begin, I note that many of the entries challenged come from Ms. Nunnenkamp

---

[3] Courts in this district sometimes use an even more detailed definition. Block billing is "any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the two tasks could have taken anywhere from a small to a substantial period of time." *Dunn v. CSK Auto, Inc.*, No. CV-05-116-HU (D. Or. Nov. 13, 2006). Under either the broad or specific definition, the end result is the same—entries must be sufficient for the court to assess the reasonableness of time spent on specific tasks.

PAGE 11—OPINION AND ORDER

and qualify as clerical work. Because they have previously been excluded, any block billing in those entries is irrelevant. Although the better practice is to justify a bill prior to the reply, I find that plaintiff has, at the end of the day, adequately supported these billing entries.[4]

### 4. Duplicative Billing

Finally, defendants point to twenty entries they contend are duplicative. (Defs.' Resp. (#165) 6-24.) They cite caselaw to support the idea that good billing judgment requires (1) that only one person bill for each task, and (2) that attorneys exclude time spent in "purely internal discussions relating to the allocation of a firm's attorney resources." (*See id.* at 6-7 (quoting *Galdamez v. Potter*, No. CV 00-1768-PK, 2007 WL 1541739, at *2 (D. Or. May 23, 2007)).) Defendants object, however, to nearly every instance in which two members of plaintiff's team confer with each other, regardless of the subject. (*See, e.g.*, Defs.' Resp. (#165) 18 (objecting to the paralegal's entry "correspondence with BR via email re: status of case and call from Daniel Orme" as duplicative, even though Mr. Rosenthal did not also bill for receipt and reading of that email, nor did it appear to address allocation of the team's resources, but rather strategy of the case).) They also object to numerous entries that do not appear duplicative at all—for example, defendants object to Mr. Rosenthal's "preparation of exhibits/witness summaries" on 5/7/09 as duplicative, even though there are no other entries from anyone on plaintiff's team for the same day. (*See id.* at 20.)

The primary example of potentially duplicative billing is the presence of both Ms. Scheewe (paralegal) and Mr. Rosenthal (attorney) at trial. (*See id.* at 22.) My own observations of

---

[4] While the handwritten records and shorthand are less organized than entries generated by billing software, I do not penalize Mr. Rosenthal, a solo practitioner, for maintaining handwritten records that he then converts into a typed format.

PAGE 12—OPINION AND ORDER

Ms. Scheewe are that she functioned very much like a skilled paralegal at trial. Indeed, I question whether Mr. Rosenthal could have successfully tried this case without her. I therefore reject the challenge to duplicative billing.

     **5.**     **Excessive Time**

Finally, I briefly address the time spent on one particular task. In reviewing the request, I noticed that Ms. Flynn billed nearly thirty hours to prepare a sixteen-page response to defendants' Motion for Judgment as a Matter of Law On Punitive Damages. (Rosenthal Decl. (#160) ¶ 3.) While defendants did not object to this time, I note my independent duty to review the fee request for reasonableness, and I do find that the time spent was excessive. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) (noting the district court's "duty to independently review the applicant's fee request"). I therefore reduce Ms. Flynn's awardable hours to twenty, which I find to be a reasonable amount of time spent on such a task in this particular case.

     **C.**     *Lodestar Calculation*

According to the reasonable rate for each member of plaintiff's team and the reasonable hours expended in pursuit of plaintiff's claim, I recognize the following lodestar attorney fee:

    Mr. Rosenthal: 352.89 hours x $275 = $97,044.75

    Ms. Nunnenkamp: 30 hours x $100 = $3000.00

    Ms. Scheewe: 40.4 hours x $150 = $6060.00

    Ms. Flynn: 20 x $325 = $6500.00

This results in a total lodestar attorney fee of $112,604.75.

**II.**     <u>The Twelve Factor Test</u>

Parallel to the lodestar method is the twelve-factor test first listed in *Kerr v. Screen*

PAGE 13—OPINION AND ORDER

*Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The factors are simply another way to determine the underlying question of reasonableness discussed above, but in the interest of thoroughness, each will be briefly discussed below.

    A.    *The Time and Labor Required*

The likely point of this factor is to reward cases where the time and effort involved were greater than normally required to prevail. This might be true, for example, where obtaining the necessary information was unusually difficult. Nothing about the case made the time and labor an unusual factor favoring some enhanced award for plaintiff. This factor is neutral.

    B.    *The Novelty and Difficulty of the Questions Presented*

This case presented a relatively straightforward claim for retaliation. Despite the parties' continued dispute about the proper outcome, the case did not involve particularly novel legal issues in employment law. This factor is neutral.

    C.    *The Skill Requisite to Perform the Legal Service Properly*

Taken as a whole, this case required what one might term the "normal" amount of skill to perform the legal service properly. Nothing about the case presented an opportunity to display extraordinary skill, so this factor is neutral.

    D.    *The Preclusion of Employment Due to Acceptance of the Case*

Mr. Rosenthal represents that, as a solo practitioner, acceptance of this case precluded him from accepting other fee-generating cases. This statement is undisputed, and favors plaintiff.

    E.    *The Customary Fee*

Plaintiff does not address this factor, so I consider it neutral.

    F.    *Whether the Fee was Fixed or Contingent*

As described above, this factor is not considered. *See Dague*, 505 U.S. at 562-67; *Stewart*, 987 F.2d at 1453.

    G.    *Time Limitations Imposed by the Client*

I agree with plaintiff's assertion that this factor is neutral.

    H.    *The Amount Involved and the Results Obtained*

There is no question that the results obtained here are excellent, and that this factor weighs in plaintiff's favor. An enhancement, however, is appropriate only "in extraordinary circumstances," and no evidence rebuts the "strong presumption that the lodestar is sufficient" and already captures this factor. *See Perdue*, --- S.Ct. ----, 2010 WL 1558980, at *3. For this same reason, I decline to award any multiplier in this case, despite plaintiff's request. (*See* Pl.'s Mot. for Att'y Fees (#141) 11.)

    I.    *The Experience, Reputation, and Ability of the Attorneys*

Plaintiff's attorney and legal team generally performed within the range of acceptable representation. I recognize that Mr. Rosenthal has a good deal of experience litigating employment cases. As defendants point out, however, there were a number of instances where counsel's performance or compliance with discovery rules was poor. (*See* Defs.' Resp. (#165) 4.) But just as an enhancement for the result should be applied only in extraordinary cases, so a reduction for poor performance should occur only in the unusual case. This was not such a case.

    J.    *The Undesirability of the Case*

I assume this factor is designed to award attorneys who take on unpopular causes, and rightly so. Mr. Rosenthal contends that employment cases are undesirable to the bar due to their

PAGE 15—OPINION AND ORDER

factual and legal complexity. This is undisputed by defendants and favors plaintiff.

### K. *The Nature and Length of the Professional Relationship with the Client*

I agree with plaintiff that this is not a relevant factor here.

### L. *Awards in Similar Cases*

Plaintiff's counsel points to one award in a Title VII sexual harassment case before Judge Stewart that settled on the eve of trial, which allowed the plaintiff to recover more than $158,000.00 in attorney fees. (*See* Pl.'s Mot. for Att'y Fees (#141) 10.) Counsel does not provide any additional information about how that case is similar to this one, though the comparison is undisputed by defendants, so this weights slightly in favor of the general reasonableness of plaintiff's requested fees.

Taken as a whole, the twelve-factor test leads me to the same conclusion as the lodestar analysis. In summary, the result was excellent, the case was fairly typical, and the rate at which Mr. Rosenthal seeks compensation is in excess of what is reasonable. I have therefore tried to determine a reasonable rate and a reasonable number of hours in order to adequately compensate plaintiff for his attorney fees.

## III. <u>Costs</u>

Expenses that may be taxed as costs are enumerated in 28 U.S.C. § 1920. Additionally, under 42 U.S.C. § 1988, out-of-pocket expenses normally incurred by an attorney and charged to the client are recoverable costs. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986).

Plaintiff submitted a bill of costs of $7941.03. (*See* Rosenthal Decl. (#160) ¶ 5.) Defendants initially objected to $6,439.22 of the costs. (Defs.' Resp. (#165) 25-28.)

### A. *Photocopy Costs*

Section 1920 allows for recovery of photocopy expenses for documents produced in discovery, those submitted to the court, and those used in trial as exhibits, but no recovery is allowed for copies "prepared for the convenience of the attorneys." (*See* Defs.' Resp. (#165) 25-26.) Defendants claim that plaintiff double-billed for one photocopy expense, and also argues that the descriptions of the individual photocopy jobs are not detailed enough to determine whether the costs were proper. (*Id.*) In response, plaintiff confirms that the cost inadvertently listed twice was not carried over to the actual bill of costs, and also argues that no copies were "prepared for the convenience of the attorneys" because plaintiff's counsel is a solo practitioner and did not make additional copies for himself. (Pl.'s Reply (#178) 7.) I agree it is unlikely that plaintiff's counsel made many copies for himself, but because he failed to provide any level of detail in order to make that determination, I reduce his "Copies" line item by 20%, from $442.53 to $354.02, a reduction of $88.51. I find that the remainder of his photocopy costs, including costs for demonstrative exhibits, are appropriately recoverable.

### B. *Deposition & Witness Fees*

Defendants acknowledge that recovery for costs related to witness fees and depositions are generally allowed, but they originally objected that plaintiff did not submit proper documentation. (Defs.' Resp. (#165) 27.) Plaintiff thereafter submitted the necessary documentation for all items except plaintiff's deposition transcript, and defendants did not raise the objection again in their sur-reply. I find that these costs are recoverable, less the undocumented $277.20 for plaintiff's deposition transcript.

    C.    *Parking Expenses*

Defendants object to the inclusion of parking expenses during trial, and plaintiff simply response that the expenses were "specifically incurred due to having to attend the Court trial." (*See* Defs.' Resp. (#165) 27; Pl.'s Reply (#178) 8.) Because the cost of parking is generally considered overhead, I do not allow plaintiff to recover parking costs, and thereby reduce the cost award by $39.26.

In total, I find that plaintiff may fairly recover $7536.06 in costs.

## CONCLUSION

For the reasons given above, I GRANT IN PART and DENY IN PART plaintiff's request for attorney fees and costs (#141, 142). The overall request of $160,658.13 is reduced by: (1) the fees sought for Mr. Rosenthal's time, in excess of $275 per hour; (2) the fees sought for clerical work; and (3) excessive time spent on Ms. Flynn's response to defendants' motion regarding punitive damages. This results in a fee award of $112,604.75. I also award plaintiff $7536.06 in costs. I also DENY AS MOOT plaintiff's motion to consider additional authority (#195).

DATED this  3rd  day of May, 2010.

                                                /s/ Michael W. Mosman  
                                                MICHAEL W. MOSMAN  
                                                United States District Court